IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SIMON RABAN, et al.            :            CIVIL ACTION
                               :
          v.                   :
                               :
PATRICK BUTLER, et al.         :            NO. 11-5656

MEMORANDUM

Bartle, J.                                February 22, 2012

        Plaintiffs Simon Raban and his wife Marina Raban bring
this action against defendants Patrick Butler and Michael
Swininger, individually and in their official capacities as
police officers in West Vincent Township in Chester County, for
violation of plaintiffs' civil rights under 42 U.S.C. § 1983.
Plaintiffs also assert supplemental claims under Pennsylvania
state law for assault and battery, false imprisonment,
intentional infliction of emotional distress, trespass,
interference with state constitutional rights, negligence, and
gross negligence.  Before the court is the motion of defendants
to dismiss for failure to state a claim for relief under Rule
12(b)(6) of the Federal Rules of Civil Procedure.  With respect
to the federal claims, defendants assert the doctrine of
qualified immunity from suit.

                              I.

        When deciding a Rule 12(b)(6) motion to dismiss, the
court must accept as true all factual allegations in the
complaint and draw all inferences in the light most favorable to

the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233
(3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59,
64 (3d Cir. 2008).  We must then determine whether the pleading
at issue "contain[s] sufficient factual matter, accepted as true,
to 'state a claim for relief that is plausible on its face.'"
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim
must do more than raise a "'mere possibility of misconduct.'"
Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)
(quoting Iqbal, 129 S. Ct. at 1950).  Under this standard,
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
129 S. Ct. at 1949.  This court may consider the allegations in
the complaint along with matters of public record and any
exhibits attached to the complaint.  E.g., Pension Benefit Guar.
Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.
1993).

II.

        The following facts are taken in the light most
favorable to plaintiffs as the nonmoving parties.  On
September 8, 2009, West Vincent Township Police Officer Butler
and another officer knocked on the door of the Raban residence
where Butler informed Simon Raban that his neighbor's pool had
been vandalized.  According to Butler, the vandals had thrown a
black paint-like substance into the pool and onto the surrounding
patio.  Raban stated that he had heard his dog barking between

-2-

the hours of 2:00 a.m. and 3:00 a.m., which was unusual but that he had not seen anything.

Accompanied by Simon Raban, Butler and the other officer proceeded to a wooden fence separating the Rabans' property from that of the victim neighbor.  Butler pointed out fresh black spots on the Rabans' side of the fence and the ground nearby.  Raban believed these fresh spots were "morning dew" and "dirt."  The other officer photographed the spots.  Butler then left to speak with other neighborhood residents.  Afterwards, Butler returned to the police station.  According to the complaint, sometime that afternoon Butler left a telephone message for Simon Raban stating that Butler had found evidence on the property of another neighbor where he believed the vandals had entered.

Butler, who had investigated approximately 90 cases involving criminal mischief in his more than five years as a police officer, prepared an affidavit of probable cause and a search warrant for the Raban property "at the direction and with the participation" of Police Chief Michael Swininger.  The affidavit, which was signed by Butler, contained the following information:

- "[T]here was a black oil based substance that smelled very similar to paint in the water and on the concrete to the side of the pool."

- "The black substance had been dumped into the pool and had been dropped on the sidewalk around the pool in the area of the hot tub that was connected."

-3-

- The pool owner believed the incident occurred sometime between 11:45 p.m. and 5:30 a.m.

- Officer Butler had "followed a trail to the wooden picket fence" separating the neighbor's property from that of the Rabans.

- "There were drops of what appeared to be the same black substance on both sides of the fence."

- Butler found "2 trails of spots from what appeared to be the same black substance that went towards Mr. Raban's house but stopped at some bushes."

- The neighbor believed that Simon Raban dumped the paint into his pool because he testified against Raban at a hearing for harboring a dangerous dog which resulted in Raban being fined by the Township.

- Another neighbor who had also testified against Raban at the same hearing had "a copious amount of dog feces" dumped on her lawn.

- There had been no other incidents of criminal mischief for "the past 2-2.5 years."

- The Rabans had an outside spotlight pointing towards the neighbor's residence but this "light has been turned off the past 3 nights."

After Butler obtained approval of the District Attorney's Office, he appeared before District Justice James V. DeAngelo, who signed the warrant on September 9, 2009 at 12:05 p.m.  It permitted the police to search the Raban home, garage, deck, and property for and to seize "[a]ny material matching the paint-like substance that was found in the [neighbor's] pool" and

-4-

"[a]ny items, tools, articles of clothing, towels, rags, gloves or footwear soiled, stained or contaminated with any material matching the paint-like substance" found in the pool.

At approximately 2:00 p.m. that day, a team of police officers arrived at the Raban residence with the search warrant. Swininger led the team as Chief of Police.  Butler was not present.  According to the complaint, the police officers had their guns drawn when Marina Raban opened the door.  She was then ordered to wait outside while officers searched the property. The officers "ripped apart" the Rabans' bed and spread trash in front of the garage.  After an hour, the officers left with a small clear plastic bag believed to be cocaine.  This "cocaine" was later revealed to be powdered sugar.

III.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a deprivation of a federally-protected right by an individual acting under color of state law.  Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997).  Plaintiffs here assert that defendant police officers violated their rights under the Fourth Amendment of the United States Constitution, as incorporated into the Fourteenth Amendment, by illegally searching their home.[1]

---

1.  In their complaint, plaintiffs also assert in conclusory fashion that their First Amendment, Due Process, and Equal Protection rights were violated.  These allegations do not pass muster under Twombly and Iqbal and any claims under these constitutional provisions will be dismissed.  See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 570.

Defendants, as noted above, move to dismiss this complaint on the ground that they are entitled to qualified immunity from suit.  There is a two-part inquiry in making this determination.  We must ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Scott v. Harris, 550 U.S. 372, 377 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  We must also inquire "whether the right was clearly established ... in light of the specific context of the case." Id.  Unless both questions are answered in the affirmative, the defendants are entitled to qualified immunity.

Under Saucier, district courts were required first to address the question whether there was a constitutional right before turning to the second question.  533 U.S. at 200-01.  More recently, the Supreme Court, receding from Saucier, has held that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

We begin with the first prong, that is, whether the search of the Raban home violated the plaintiffs' rights under the Fourth Amendment.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but
upon probable cause, supported by Oath or
affirmation, and particularly describing the
place to be searched, and the persons or
things to be seized.

U.S. Const. amend. IV.

With the exception of certain limited situations not
relevant here, police must secure a warrant supported by probable
cause and approved by a neutral and disinterested magistrate
before conducting the search of a home.  E.g., Kyllo v. United
States, 533 U.S. 27, 31 (2001).  Probable cause to search exists
when "there is a fair probability that contraband or evidence of
a crime will be found in a particular place." United States v.
Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462
U.S. 213, 238, (1983)).  It is a flexible, common-sense standard
based on the totality of the circumstances.  Gates, 462 U.S. at
232.  It does not require proof beyond a reasonable doubt or even
a preponderance of the evidence.  E.g., United States v.
Vosburgh, 602 F.3d 512, 527 (3d Cir. 2010).

The Supreme Court has emphasized the importance of a
neutral and detached magistrate in determining whether there is
probable cause:

The point of the Fourth Amendment, which
often is not grasped by zealous officers, is
not that it denies law enforcement the
support of the usual inferences which
reasonable men draw from evidence.  Its
protection consists in requiring that those
inferences be drawn by a neutral and detached
magistrate instead of being judged by the
officer engaged in the often competitive
enterprise of ferreting out crime.

-7-

Johnson v. United States, 333 U.S. 10, 13-14 (1948).  A
magistrate's determination of probable cause is entitled to great
deference.  However, that deference is not "boundless."  United
States v. Leon, 468 U.S. 897, 914 (1984).

        If an officer executed a search in good-faith reliance
on a warrant issued by a magistrate and that reliance was
objectively reasonable, evidence will not be suppressed and the
officer will be entitled to qualified immunity from civil suit
for damages even if probable cause did not in fact exist.  Id. at
920-23.  On the other hand, an officer may not rely on a warrant
and the magistrate's probable cause determination if the
officer's reliance is objectively unreasonable.  Id. at 915.
Thus, an officer may be subject to suit where he or she executes
a search based on a "bare bones" affidavit so lacking in probable
cause that no reasonably competent officer would rely on it.
Id.; see also United States v. Am. Investors of Pittsburgh, Inc.,
879 F.2d 1087, 1106 (3d Cir. 1989).  In addition, an officer is
not immune from liability where he or she knowingly or recklessly
made false statements or omissions which would have been material
to the magistrate's finding of probable cause.  Leon, 468 U.S. at
914.

        Here, defendant Swininger headed the execution of the
search warrant at the Raban home.  There is no allegation in the
complaint that Swininger had any information beyond what was
contained in Butler's supporting affidavit.  Butler's affidavit
set forth multiple facts from which a reasonable officer could

                                -8-

conclude that probable cause existed to search the Raban home. The affidavit stated that a similar black substance was found on the victim's property and the Raban property and that the black spots led "towards Mr. Raban's house but stopped at some bushes." The important facts that the victim neighbor had recently testified in court against the Rabans and that the Rabans had turned off their spotlight toward their neighbors' property for several nights including the night in question were also included.

The warrant also described with particularity the Raban home and the particular items to be seized.  We are not persuaded by plaintiffs' assertions that the warrant was too general in scope or was merely "exploratory."  See United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1993).

No reasonable jury could find that it was objectively unreasonable for Swininger to rely on the supporting affidavit signed by Butler or the warrant signed by the District Judge. Therefore, Swininger is entitled to qualified immunity from suit for his role in the search of the Raban home.

We now turn to the issue of whether defendant Butler is entitled to qualified immunity as a result of his role as the investigator and the affiant of the affidavit used to support the issuance of the warrant.  Plaintiffs claim that he made material false statements in or omitted material information from the affidavit.  Under the circumstances, this court may look behind the face of the affidavit to determine its veracity.  Franks v.

-9-

<u>Delaware</u>, 438 U.S. 154, 171 (1978).  Butler is not entitled to qualified immunity if:  (1) he "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) "such statements or omissions are material, or necessary, to the finding of probable cause."  <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997) (citing <u>Franks</u>, 438 U.S. at 171-72).

A false assertion is made with reckless disregard only if "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." <u>Wilson v. Russo</u>, 212 F.3d 781, 788 (3d Cir. 2000).  Mere negligence or inadvertent mistake on the part of an officer will not defeat qualified immunity.  <u>Id.</u> at 787.  Omissions are made with reckless disregard for the truth if "an officer recklessly omits facts that any reasonable person would know that a judge would want to know."  <u>Wilson,</u> 212 F.3d at 783 (quoting <u>United States v. Clapp</u>, 46 F.3d 795, 801 n.6 (8th Cir. 1995).  However, an officer is not required to "relate the entire history of events leading up to a warrant application with every potentially evocative detail."  <u>Id.</u> at 787.  To determine whether any false statements or omissions were material, we "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause."  <u>Id.</u> at 789.

According to the Rabans, Butler made the following important omissions from the affidavit of probable cause:

- The trail of black spots leading towards the Raban home stopped two feet inside the Raban property line and ninety feet from the rear of the Raban home.

- Simon Raban's belief that the black spots were merely "dirt" or "morning dew."

- Butler's failure to conduct any tests on the black spots to confirm that they were the same substance he found in the pool and did not "claim any expertise in matching the spots."

- Simon Raban's observation that his dog barked in the early morning hours of September 8, 2009 and that this was "unusual."

- Butler's telephone message to Simon Raban stating that he had found evidence on the property of another neighbor where he believed the vandals had come through.

The Rabans also contend that Butler's affidavit misstated that there had been no other criminal mischief reports in 2009.

Although the distance between the black spots and the Rabans' home is arguably something that a district justice would want to know, its omission is not material.  This information would not change the fact that the spots were found on the Rabans' fence and in their yard and continued some distance toward their house.  "[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant."  Conley, 4 F.3d at 1207.  Accordingly, Butler was entitled to infer that evidence of the crime could be found in the Raban residence even if the trail of black spots did not lead up to a front or back door.

-11-

Similarly, the fact that Butler failed to test the black spots and that Simon Raban believed the spots were "dirt" or "morning dew" is not material to determining the existence of probable cause.  While the complaint does not make it explicit, we will assume that Raban told Butler about his belief.  In any event, it was fair for Butler to rely on his own olfactory and visual senses in stating that the black spots found on and around the fence "smelled similar" and "appeared to be the same black substance" as found in the pool.  Paint is a familiar household substance which can be identified by sight, feel, and smell. There is simply no requirement that police officers conduct field tests under the facts presented here to establish probable cause. See United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006). The information offered by plaintiffs does not create "obvious reasons to doubt the accuracy of the information" provided in the affidavit regarding the black spots.  Wilson, 212 F.3d at 788.

The omission from the affidavit of Simon Raban's belief as to the nature of the black substance and his statement that his dog barked in the early morning hours of September 8, 2009 does not negate probable cause.  As noted above, there is no requirement that "police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail."  Id. at 787.  Although we assume for purposes of this motion that the observations of Simon Raban were true, a neutral magistrate would find his uncorroborated observations to be self-serving and of little probative if any value.

-12-

We also fail to see how Butler's telephone message to Raban is material to the probable cause inquiry. Again, even if it took place an officer is not obligated to include every detail in the affidavit of probable cause. Id. Furthermore, "a requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process" and "place an extraordinary burden on law enforcement officers." United States v. Colkley, 899 F.2d 297, 302-03 (4th Cir. 1990). Butler's observation of black spots on another neighbor's property does not change the fact that he also saw black spots on the Rabans' property. While this information "could be used for impeachment at trial, a police officer cannot be expected to present a judge with complete background." Wilson, 212 F.3d at 788.

Finally, plaintiffs argue the warrant is fatally defective because Butler's statement in the affidavit was in error concerning the number of criminal mischief incidents in the last few years. The argument is without merit. This information would have had no influence on any District Judge who issued the warrant.

Again, plaintiffs do not dispute that Butler sighted black spots in the victim's pool and on the fence and property of the Rabans. It is also undisputed that the victim neighbor had recently testified against the Rabans for harboring a dangerous dog and that another neighbor who testified against them had similarly been the victim of

-13-

criminal mischief.  Thus, police had reason to believe that
plaintiffs had a motive for the crime in question.  Finally,
plaintiffs do not disagree that although they normally kept a
spotlight pointed towards the neighbor's house, the light had
been turned off on the night in question.  After weighing
this inculpatory evidence against the potentially exculpatory
evidence excluded from the warrant, probable cause, a low
standard of proof, clearly existed for the search of the
Raban home.  Simply because no incriminating evidence was
found during the search does not mean that a Fourth Amendment
violation occurred.

　　　　　In sum, Swininger did not violate plaintiffs' Fourth
Amendment rights because he reasonably relied on the warrant and
supporting affidavit that were not facially defective.  Butler
also did not violate plaintiffs' rights because even under a
"corrected" affidavit, probable cause existed to search the Raban
home.  Since no Fourth Amendment violation took place, we need not
reach the issue of whether the right claimed by the Rabans under
the Fourth Amendment was clearly established.  <u>Pearson</u>, 555 U.S.
at 232.  Both officers are entitled to qualified immunity from
suit.

　　　　　Accordingly, the motion of defendants to dismiss
plaintiffs' § 1983 claims will be granted.  We will exercise our
discretion to dismiss without prejudice under 28 U.S.C. § 1367(c)(3)
plaintiffs' supplemental state law claims.  <u>See</u> <u>also</u> 42 Pa. Cons.

Stat. Ann. § 5103(b); <u>Bradgate Assocs. v. Fellows, Read & Assocs.</u>, 999 F.2d 745, 751 & n.5 (3d Cir. 1993).[2]

---

2.  Plaintiffs also allege in their complaint that defendants acted "in concert" and "as part of a conspiracy to improperly obtain a search warrant."  To the extent that plaintiffs are attempting to state a claim for conspiracy under 42 U.S.C. § 1985, this claim would fail because, as discussed above, no constitutional right was violated.